Argued January 6, reversed and remanded January 26, 1966

# COKE *v.* COKE

410 P. 2d 214

*Fred H. Bernau,* Roseburg, argued the cause for

appellant. On the brief were Arthur A. Wilson and Bernau & Wilson, Roseburg.

No appearance for respondent.

Before McAllister, Chief Justice, and Perry, Goodwin, Holman and Schwab, Justices.

SCHWAB, J. (Pro Tempore).

Plaintiff appellant, appointed conservator for Dorothy Coke on December 18, 1964, brought a suit against Charles Coke, foster son of Adam Coke, Dorothy's deceased husband, seeking a decree setting aside a quitclaim deed to residential real property given by Dorothy to Charles four days after the death of Adam Coke.

The basic issue upon which this case turns is whether Dorothy Coke had mental capacity sufficient to execute a valid deed.

Adam Coke came to Oregon in 1950 or 1951 with his first wife Goldie, who died in 1953. He acquired a small parcel of land in Douglas county. In 1952 Charles Coke, the foster son of Adam and Goldie, came to Douglas county. Charles helped Adam build a three-room house on a part of the property and later a second house, subsequently deeded to and occupied by Charles, was built on the same property.

At the time of Adam's death, he and Dorothy were living in the house which was built first, and Charles and his second wife in the one to which Charles held title. Adam was a man of modest means —he left only the three-room house on a plot of land 128 x 149.8, total appraised value of building and land being $5,000, personal effects appraised at $840, and $1,000 in life insurance.

Charles Coke contends that he contributed substantial amounts of time and money to Adam for various purposes during Adam's lifetime with the understanding between them that on Adam's death the real property in Adam's name was to go to Charles. He says he told Dorothy this immediately after Adam's death and that she indicated her knowledge of such an agreement.

In any event, on September 29, 1964, four days after the demise of Adam, Charles took Dorothy to a lawyer's office where, being unrepresented and not having consulted anyone about the matter, she signed a quitclaim deed conveying title to the home property to Charles.

The lawyer in whose reception room the deed was signed testified that acting on instructions from Charles he had prepared the deed in advance. He had never met Dorothy and recalled saying nothing to her except "this is the deed; sit down and read it." He said she read it and signed it, and that was the end of the transaction as far as he was concerned.

Dorothy did not go to school beyond the 8th grade and remained, unemployed and unwed, with her mother until 1954 when, at age 29, she married Adam Coke.

All the witnesses except Charles Coke and his first wife testified that while the married life of Adam and Dorothy was harmonious, Dorothy was mentally dull, completely dependent on Adam, and not capable of performing even routine household tasks without considerable, albeit gentle, guidance from Adam. One witness who had known her from infancy said it was common knowledge that "she wasn't altogether right at all times" and that in many respects Adam treated her as a daughter. The family pastor of long standing described her as not mentally normal.

A clinical psychologist on the staff of the Veteran's Administration, who examined and tested Dorothy Coke in March of 1965, testified that she had a basic mental capacity which placed her in the borderline defective range. He said that her emotional instability, isolated existence, and social and educational deprivation made it impossible for her to fully utilize even her very limited capacity. He did not believe she could understand a property transaction and specifically did not believe she could understand a deed if she read one. In his opinion her ability to comprehend such a transaction could not have been any greater in September of 1964 than it was when he saw her in March of 1965.

The only evidence to the contrary was the testimony of the defendant and his first wife that Dorothy was capable of doing something "if she made up her mind." Even this weak assertion was refuted by testimony of several witnesses that the defendant had previously referred to Dorothy on various occasions as "farfetched," "low on marbles" and "nuts."

■■ The test of mental capacity to execute a deed lies in the capacity to understand the nature of the act and to apprehend its consequence. One lacking in such capacity may not execute a valid deed even though she is not totally bereft of understanding. *Legler et al. v. Legler*, 187 Or 273, 211 P2d 233. The evidence demonstrates that Dorothy Coke did not have the requisite mental capacity. Under such circumstance if the defendant had the agreement he claims with Adam Coke, he cannot be permitted to carry it to fruition through the "self-help" he here attempted.

Reversed and remanded for entry of a decree in accordance with this opinion.